UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KENNETH I DEANE, | CASE NO. C19-722 MJP |
| Plaintiff, | ORDER ON POST-TRIAL MOTIONS |
| v. | |
| PACIFIC FINANCIAL GROUP INC, MEGAN P MEADE, NICHOLAS B SCALZO, EVA M SCALZO, JAMES C MCCLENDON, JOAN A MCCLENDON, GAETAN T SCALZO, SHERRIE SCALZO, | |
| Defendants. | |

This matter comes before the Court on: (1) Plaintiff's Motion for Attorneys' Fees and

Costs (Dkt. No. 153); (2) Plaintiff's Motion to Amend the Findings of Fact and Conclusions of

Law (Dkt. No. 166); (3) Defendants' Motion to Alter and Amend the Findings of Fact and

Conclusions of Law (Dkt. No. 168); and (4) Defendants' Motion and Amended Motion to

Extend Automatic Stay of Judgment (Dkt. Nos. 170 & 174). Having reviewed the Motions,

Oppositions (Dkt. Nos. 162, 175, 177, & 178), Replies (Dkt. Nos. 172, 180, 182, & 183), and all supporting materials, the Court rules as follows:

    (1) The Court GRANTS in part and RESERVES RULING in part on Plaintiff's Motion for Fees and Costs;

    (2) The Court DENIES Plaintiff's Motion to Amend;

    (3) The Court DENIES Defendants' Motion to Alter and Amend; and

    (4) The Court DENIES Defendants' Motion to Stay Entry of Judgment.

## BACKGROUND

The Court held a 5-day bench trial from October 26th to 30th, 2020, with closing arguments on November 5, 2020. On November 25, 2020, the Court issued its Findings of Fact and Conclusions of Law (Dkt. No. 151), and judgment was entered the same day (Dkt. No. 152). The Court found in favor of Plaintiff Kenneth Deane on his breach of contract claim. The Court did not find in Deane's favor on his willful withholding of wages claim under RCW 49.52.050. And the Court rejected Defendants' counterclaims.

Deane now seeks attorneys' fees and costs, and an amendment to the findings of fact and conclusions of law to entitle him to entry of judgment in his favor on his willful withholding of wages claim. Defendants similarly seek to amend the findings of fact and conclusions of law in order to obtain judgment in their favor on the breach of contract claim and counterclaims. They also seek a stay of the entry of judgment.

## ANALYSIS

**A.     Motion for Attorneys' Fees and Costs**

Deane asks for an award of $800,540.00 in attorneys' fees, $40,320.00 in paralegal fees, and $157,440.50 in costs. The Court GRANTS the request for fees in part and RESERVES RULING on the request for costs.

### 1.      Attorneys' Fees

The parties agree that Deane is entitled to an award of attorneys' fees and costs under Section 19 of the Employment Agreement between Deane and Defendant The Pacific Financial Group (TPFG). Deane also seeks fees under the Washington wage laws, RCW 49.48.030. But because he did not prevail on his willful withholding of wages claim, this law is inapplicable. He is only entitled to fees and costs under the terms of the Employment Agreement.

To calculate the attorneys' fee award, the Court must determine the lodestar—the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. Ewing v. Glogowski, 198 Wn. App. 515, 521 (2017) (citation omitted). The requesting attorney "must provide reasonable documentation of the work performed." Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 597 (1983) "This documentation need not be exhaustive or in minute detail, but must inform the court, in addition to the number of hours worked, of the type of work performed and the category of attorney who performed the work (i.e., senior partner, associate, etc.)." Id. "The lodestar amount may be adjusted to account for subjective factors such as the level of skill required by the litigation, the amount of potential recovery, time limitations imposed by the litigation, the attorney's reputation, and the undesirability of the case." Brand v. Dep't of Labor & Indus. of State of Wash., 139 Wn.2d 659, 666 (1999), as amended on denial of reconsideration (Apr. 10, 2000), as amended (Apr. 17, 2000) (citing Bowers, 100 Wn.2d at 597; Rules of Professional Conduct (RPC) 1.5(a)).

Defendants: (1) challenge the hourly rate of Jon Rosen, Deane's attorney; (2) dispute the hours Rosen expended; and (3) request a downward adjustment on the total award.

#### a.      Hourly Rate

Deane asks the Court to apply an hourly rate of $650/hour for Rosen's work. The Court finds this rate reasonable for three reasons.

1    First, two attorneys familiar with Rosen's work and the going rates in the region claim

2 that a rate of $650/hour is reasonable given Rosen's experience and result achieved. Judith

3 Lonnquist has known Mr. Rosen for more than 40 years and knows the quality of his work

4 generally and in this case. (Decl. or Judith Lonnquist ¶¶ 1, 9 (Dkt. No. 156).) She is acquainted

5 with fee awards in employment cases and the market rates for employment lawyers in Western

6 Washington. (Id. ¶ 7.) It is her "professional opinion that Mr. Rosen's $650/hour rate is

7 reasonable and within the market rates for lawyers with his experience" and in light of the "result

8 he achieved in this case." (Id. ¶ 9; see id. ¶ 10.) She herself charges $650/hour. (Id. ¶ 10.)

9 Lonnquist also notes that Rosen faced substantial risk as a solo practitioner "pitted against a

10 large firm such as defense counsel here" who could "overwhelm plaintiff's counsel with

11 increased workload and financial overlay." (Id. ¶ 13.) Jerome Rubin, an attorney with Williams

12 Kastner, has reviewed Rosen's work in this case and believes that given the "excellent result for

13 his client" Rosen's rate of $650 is reasonable and "on the low end of the range charged by

14 comparably skilled and experienced attorneys in th[e Seattle] area." (Rubin Decl. ¶¶ 5-6.) He

15 charges $635/hour for drafting the declaration. (Id. ¶ 9.)

16    Second, Rosen states that "dozens of individuals retaining Mr. Rosen have paid and

17 continue to pay him at the $650.00 an hour rate." (Mot. at 8 (citing Rosen Decl. ¶ 10).) This

18 supports a finding that the rate is reasonable. See Bowers, 100 Wn.2d at 597 ("Where the

19 attorneys in question have an established rate for billing clients that rate will likely be a

20 reasonable rate.").

21    Third, the rate he requests is only 13% over the $575/hour rate that Deane agreed to pay

22 Rosen to help negotiate with TPFG before the parties ended up in litigation. This is a modest

23

24

1    increase over the hourly rate, and it is justified given the risk of nonpayment that Rosen took on

2    through the contingency arrangement.

3        Defendants argue that the Court should cap Rosen's rate at $500/hour because that is the

4    highest rate he has been awarded by a court. But the two cases Defendants cite are from 2013

5    and 2015. It is not unreasonable that Rosen's fees have gone up over the past 5 to 7 years. And

6    Defendants do not explain why an arbitrator award of $575/hour from 2016 should not be

7    considered. On balance, Defendants fail to provide any valid reason why a rate of $650/hour

8    should not be applied to Rosen work in this case. The Court adopts the $650/hour rate.

9                          **b.    Hours Expended**

10       Deane seeks an award for the time Rosen spent: (1) prosecuting Deane's claims; (2)

11   representing Deane in his negotiations with Advisors Capital Management; and (3) defending

12   Deane from the counterclaims. This totaled 1231.6 hours. Defendants argue the hours expended

13   are not reasonable because Rosen's billing entries are too vague and billed in block increments

14   such that they cannot be fairly evaluated. Defendants also challenge the time Rosen spent

15   representing Deane in his negotiations with Advisor Capital Management—nine hours.

16       The Court finds that Rosen's billing entries do not contain sufficient detail to determine

17   whether the time Rosen spent on each activity was reasonable, particularly since he uses block

18   billing. This is not the first time Rosen has faced criticism for his billing practices. See See v.

19   San Juan Cty., C13-1321 TSZ, 2015 WL 11234161, at *2 (W.D. Wash. Feb. 18, 2015) (reducing

20   Rosen's time spent by 15% in part due to block billing and vague time entries that did not "allow

21   the Court and the opposing party to fairly ascertain what the attorney was doing and what the

22   work was related to"). Rosen acknowledges this criticism and voluntarily offers to write-off 10%

23   of his time entries specific to Deane's unsuccessful wage withhold claim—85.2 hours. But the

24   inadequate billing practice applies to all of Rosen's work, so the proposed haircut is not

1    sufficient to address this problem. The Court finds a reduction of 10% for all time spent in

2    prosecuting and defending this action is a reasonable reduction to account for the Court's

3    inability to vet fully each billing entry for its reasonableness.

4         But the Court is not persuaded to reduce the hours any further to account for Deane's lack

5    of success on his willful withhold of wages claim. The evidence that supported that claim was

6    substantially intertwined with the evidence supporting his successful breach of contract claim

7    and the Court is not persuaded that segregation is necessary. See Ewing v. Glogowski, 198 Wn.

8    App. 515, 523 (2017) ("[S]egregation of attorney fees is not required if the trial court determines

9    that the claims are so related that no reasonable segregation can be made." (citation omitted)).

10   The Court also notes that Deane was otherwise successful on his claims and in defending against

11   the counterclaims which vitiates against the need to segregate.

12        Finally, the Court finds that the nine hours Rosen spent representing Deane in his

13   arrangements with Advisor Capital Management is not recoverable. While the advice appears

14   related to this action, the Court does not find that it was necessary to Deane's claims or defenses.

15   The Court deducts that time from the award.

16        The Court therefore finds that 1100.34 hours spent litigating the claims and defenses in

17   this case are reasonable. Using the $650/hour rate yields an award of $715,221 in attorneys' fees.

18              **c.      Downward Adjustment**

19        Defendants ask the Court to reduce Deane's recovery of fees by an additional 20%

20   because he only prevailed on 4 of 5 claims/counterclaims. The Court does not agree. While

21   Deane did not succeed in his willful withholding of wages claim he otherwise enjoyed complete

22   success even against substantial counterclaims. The Court does not believe that any reduction in

23   fees is warranted, particularly given the Court's assessment of the intertwined nature of the two

24   claims Deane pursued.

1        **2.      Paralegal Fees**

2        Deane requests reimbursement for the time incurred by Rosen's legal assistant, Keridan

3   Cole. Cole expended 230.4 hours at a rate of $175.00 an hour. Cole states that she cannot find

4   her time records for February 25, 2020 to April 10, 2020, so has "conservatively estimated the

5   time for this period" to what amounts to be 7 hours. (Cole Decl. ISO Pl. Mot. for Fees ¶ 5 (Dkt.

6   No. 155).) She also states that she worked on Deane's matter in December 2018 through

7   February 2019, but because she lacks time records, she does include her time spent in this period.

8   (Id.) Cole's time records include detailed descriptions of her work, though the time is block

9   billed.

10       Defendants argue that Deane cannot recover Cole's fees because she is a "legal

11  assistant," while the Employment Agreement only allows "paralegal fees." But as Deane points

12  out, the term "legal assistant" and "paralegal" have long been interchangeable. And from the

13  Court's review of her billing records, Cole was actively performing the work of a paralegal, even

14  if her title was that of a legal secretary. Defendants also ask the Court to reduce Cole's

15  compensable hours because her time entries include secretarial work that is not compensable

16  under the Employment Agreement. The Court's review of Cole's time entry does not reveal

17  work that was purely clerical or distinguishable from paralegal work. The Court declines to

18  reduce Cole's billable hours on that basis. But given Cole's failure to maintain contemporaneous

19  records for February 25, 2020 to April 10, 2020 the Court declines to award the 7 hours

20  requested.

21       The Court also rejects Defendants' attack to Cole's hourly rate. As Lonnquist states, a

22  rate of $175 an hour is reasonable based on the rates in this region. (Lonnquist Decl. ¶ 9.)

23  Additionally, Cole has worked as a legal assistant for nearly 40 years, which the Court finds

24

justifies the rate claimed. Defendants offer no contrary evidence. They instead rely on a distinguishable case where the requested paralegal rate was "completely unsupported by evidence." See Castellano v. Charter Comms., LLC, 2014 WL 1569242, at * 6 (W.D. Wash. Apr. 17, 2014). Given the support for Cole's rate, the Court finds it appropriate.

The Court therefore awards $39,095 for Cole's work, reflecting 223.4 hours at $175/hour.

### 3.      Lonnquist's and Rubin's Fees

The Court also awards Plaintiff the fees requested for the declarations of Rubin and Lonnquist. The Court founds both declarations to be helpful in assessing the fee petition, and awards the fees incurred in their preparation. See See, C13-1321 TSZ, 2015 WL 11234161, at *2 (awarding fees for a declaration filed by Lonnquist in support of Rosen's fee petition). This results in an award of $2,222.50 for Rubin's work and $1,950 for Lonnquist's work.

### 4.      Total Award for Fees:

Based on the Court's above findings, it Orders the following award of fees:

| | |
|---|---|
| $715,221 | in attorneys' fees |
| $39,095 | in paralegal fees |
| $4,172.50 | in fees for Rubin's and Lonnquist's declarations |

------------------------------------------

**$758,488.50   Total Fee Award**

### 5.      Costs/Expenses

Deane asks for an award of costs and "necessary expenses" under the Employment Agreement, totaling $142,200. This includes reimbursement for airfare, taxi, parking, food, and lodging costs ($11,068.42), Dr. DeKay's consulting and expert fees totaling ($4,556 and $108.283.80 respectively), mediation fees ($3,318.75), and legal research fees ($590.74). Defendants argue that the Employment Agreement limits recovery to "court costs" recoverable

1    under Rule 54(d) and the request should be reduced by $127,817.71, allowing for an award of

2    $29,622.79 at most.

3           Deane invokes Section 19 of the Employment Agreement as the basis for his request of

4    costs. Section 19 permits an award for "court costs incurred in litigating." But Deane does not

5    explain why this term would permit recovery of the expansive list of items in the fee petition for

6    which minimal records are provided. Deane instead urges the Court to consider "court costs"

7    through the lens of wage and civil rights statues like the Washington Law Against

8    Discrimination, which he claims allows these costs. (Reply at 6 (citing Blair v. Washington State

9    University, 108 Wn.2d 558, 573-4 (1987)).) This is unpersuasive, particularly since the wage

10   withholding act under which he unsuccessfully brought claims does not authorize recovery of

11   costs. Examining the actual language of the Employment Agreement, the Court finds that the

12   term "court costs" limit recovery of costs to those permitted under Rule 54(d)(1) and 28 U.S.C.

13   §§ 1821, 1821, 1920, and 1923. See COST, Black's Law Dictionary (11th ed. 2019) (defining

14   "court costs" as "[t]he charges or fees taxed by the court, such as filing fees, jury fees,

15   courthouse fees, and reporter fees."). The Court will therefore limit the award of costs to those

16   permitted by Rule 54(d)(1) and 28 U.S.C. §§ 1821, 1828, 1920, and 1923.

17          Deane's request for costs does not contain sufficient documentary support as required by

18   Local Rule 54(d)(1). But rather than deny this portion of the Motion, the Court provides Deane

19   with an opportunity to file a fully supported motion to tax costs in full conformity with Rule

20   54(d)(1) and Local Rule 54(d)(1). All costs shall be specified so that the nature of the charges

21   can be readily understood. Deane must also provide supporting invoices for each requested

22   charge and redact any documentation in accordance with Local Rule 5.2. Deane shall file any

23

24

renewed motion to tax costs with documentary evidence within 10 days of entry of this Order. The Court RESERVES RULING on this portion of the Motion.

**B.      Plaintiff's Motion to Amend Findings of Fact and Conclusions of Law**

Pursuant to Rule 52(b) and Rule 59(e) Deane asks the Court to find Defendants willfully withheld his wages in violation of RCW 49.52.050 and for an award of exemplary damages in the amount of $1,784.280.00. The Court has already considered and rejected Deane's claim under RCW 49.52.050 and continues to find that the dispute over the termination payments is a "bona fide" dispute precluding judgment in his favor. See Hill v. Garda CL NW, Inc., 191 Wn.2d 553, 562 (2018). The Court continues to find that Defendants had a genuine belief in the merit of the dispute over termination payments and that the dispute was objectively reasonable—i.e., "fairly debatable." Additionally, the Court found that Defendants acted on the advice of counsel in this matter.

The Court does agree with Deane that the findings of fact on this particular issue require amendment to clarify the basis of the Court's decision. Accordingly, the Court amends Finding of Fact Paragraph 47 as follows:

> TPFG's definition cannot be found in any of the contracting agreements or their amendments. Nor is it consistent with how Deane was paid during his employment. But TPFG, acting on advice of counsel, had a genuine belief that this was the correct method of defining the term "procure" in the Employment Agreement. And the Parties' dispute over the definition of this term was objectively reasonable and fairly debatable, as evidenced by the hotly-contested litigation.

Apart from this amendment, the Court otherwise DENIES the Motion.

**C.      Defendants' Motion to Amend Findings of Fact and Conclusions of Law**

Pursuant to Rule 52(b) and Rule 59(e) Defendants ask the Court to make three sets of amendments to the findings of fact and conclusions of law: (1) to redefine the term "procure" and rejigger the termination payment formula; (2) to find Deane constructively resigned; and (3)

to find that Deane breached his duty of loyalty. None of these arguments has merit and the Court DENIES the Motion.

### 1.     Defendants' Request to Redefine "Procure" and Alter the Payment Formula

The Court has already considered and rejected Defendants' request to define the term "procure" as they outline. The Court finds no basis to reconsider its decision. Nor does the Court agree that it ignored the intent of the parties in defining the term "procure." The Court's definition takes into account the Parties' intent and course of dealing.

Defendants also request the Court to halve Deane's termination payments to account for "the percentage payments to wholesalers in each territory." (Reply at 3 (Dkt. No. 182); Mot. at 6-8 (Dkt. No. 168).) But this request is not supported by any specific evidence. Section 10.2 of the Employment Agreement already requires Deane's termination payments to be half of what he regularly received from the net revenues in his territories in Schedule A. That is reflected in the Amended Findings of Fact and Conclusions of Law. (Dkt. No. 165.) Defendants do not point to any competent or convincing evidence that would justify reducing Deane's termination payments any further and the Court rejects this argument.

### 2.     Constructive Resignation

Defendants ask the Court to find that Deane constructively resigned. (Def. Mot. at 8-10 (Dkt. No. 168).) But the Court considered all of the facts Defendants presented at trial and found that the evidence was not adequate to find that Deane constructively resigned. Defendants have not identified a sufficient basis on which to reach a contrary conclusion.

### 3.     Breach of Duty of Loyalty

Defendants ask the Court to find that Deane breached his covenant not to compete with TPFG even though his joint venture with Advisor Capital Management was not launched. (Def. Mot. at 10-12.) The Court already considered all of the evidence presented by Defendants at trial

1    on this issue. Defendants cite to no new evidence or argument that the Court has not already

2    considered in reaching its decision that Deane did not breach his duty of loyalty. The Court

3    rejects this argument

4         The Court therefore DENIES Defendants' Motion to Amend in full.

5    **D.    Defendants' Motion to Stay Entry of Judgment**

6         Defendants' Motion to Stay was primarily filed to fix a problem of TPFG's own making.

7    Having inadvertently sent Deane the full judgment, TPFG asked the Court to order Deane to

8    repay it. (Dkt. No. 170). But TPFG managed to "reverse" the payment to Deane, mooting much

9    of its motion. (See Defs. Amended Mot. to Stay Judgment (Dkt. No. 174).) Defendants'

10   Amended Motion asks the Court to stay judgment until after the Court rules on the post-trial

11   motions. (Dkt. No. 183 at 1.) The Court DENIES the Motion.

12        Under Rule 62(a) "execution on a judgment and proceedings to enforce it are stayed for

13   30 days after its entry, unless the court orders otherwise." But the party can also "obtain a stay by

14   providing a bond or other security" which "takes effect when the court approves the bond or

15   other security and remains in effect for the time specified in the bond or other security." Fed. R.

16   Civ. P. 62(b). "[A]n unsecured stay is reserved for 'unusual circumstances' and awarded at the

17   court's discretion." Yenidunya Investments, Ltd. v. Magnum Seeds, Inc., No. CIV. 2:11-1787

18   WBS, 2012 WL 1085535, at *2 (E.D. Cal. Mar. 30, 2012) (citation omitted).

19        Defendants fail to advance any reason why the Court should allow an unsecured stay. As

20   Defendants acknowledge, "an unsecured stay is reserved for 'unusual circumstances' and

21   awarded at the court's discretion." (Def. Mot. at 3 (quoting Yenidunya, 2012 WL 1085535, at

22   *2).)  The only "unusual circumstances" was TPFG's mistake in sending the full judgment to

23   Deane. That errant act is no longer relevant and there is no evidence to support Defendants'

24

1    request. The most Defendants present is their argument that granting the relief they seek is

2    "consistent" with Rule 62(a). But this is not sufficient to justify the request.

3        The Court also finds that a bond may well be necessary to protect Deane's interests. In its

4    initial motion TPFG claimed it needed the funds it mistakenly sent Deane "as part of the process

5    to secure the bond." (Mot. at 3-4 (Dkt. No. 170).) This indicates the possibility that TPFG may

6    not have sufficient funds to satisfy the judgment, which strongly cuts against permitting it to

7    proceed with an unsecured stay. See, e.g., Fed. R. Civ. P. 62 Adv. Comm. Note (2018) ("One

8    reason for dissolving the automatic stay may be a risk that the judgment debtor's assets will be

9    dissipated."). The Court DENIES the Motion.

10                                **CONCLUSION**

11        The Court finds that an award of fees is appropriate under the terms of the Employment

12    Agreement for Deane's success in litigating his breach of contract claim and defending against

13    Defendants' counterclaims. The Court GRANTS Deane's Motion for Fees in part and awards

14    $758,488.50 in fees. But the Court RESERVES RULING on Deane's request for costs. Should

15    Deane continue to seek costs, he must submit a motion to tax costs within 10 days of entry of this

16    order.

17        The Court DENIES the Cross-Motions to Amend the Findings of Fact and Conclusions

18    of Law and DENIES Defendant's Motion to Stay the Judgment. The Court does, however,

19    amend Finding of Fact ¶ 47 as outlined above.

20        The clerk is ordered to provide copies of this order to all counsel.

21        Dated February 10, 2021.

22

23                                            Marsha J. Pechman
                                             United States District Judge
24